THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
Monica Reyes-Santiago (SBN 339807)
19800 MacArthur Blvd, Suite 1000
Irvine, CA 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
Email: cameron@sethatlaw.com

*Attorneys for Plaintiff, Samuel Nelson*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL NELSON, Individually<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a governmental entity; DOE 1, individually, and DOES 2 through 10, individually,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure- Unlawful Detention and Arrest (42U.S.C. § 1983)<br>3. Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>4. Municipal Liability for Ratification (42 U.S.C. § 1983)<br>5. Municipal Liability for Failure to Train  (42 U.S.C. § 1983)<br>6. Battery (State)<br>7. Negligence (State)<br>8. Violation of Bane Act (Cal. Civ. Code §52.1)<br><br>**DEMAND FOR JURY TRIAL** |

-1-

Comes now, Plaintiff Samuel Nelson, in his individual capacity, for his complaint against Defendants County of Los Angeles, DOE 1, individually, DOES 2 through 10, and alleges as follows:

## INTRODUCTION

1. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the September 23, 2020 encounter between Defendants, County of Los Angeles, Does 1 through 10, and Samuel Nelson.

## PARTIES

2. At all relevant times, Plaintiff Samuel Nelson referred to as "NELSON", is acting in his own capacity, and a resident of the County of Los Angeles.

3. At all relevant times, Defendant County of Los Angeles "COUNTY" is and was a duly organized public entity, form unknown, existing under the laws of the State of California. At all relevant times, COUNTY was the employer of Defendant DOE 1, and DOES 2 through 5 ("DOE Deputies"), who were COUNTY Deputies, and DOES 6 through 10 ("DOE SUPERVISORS"), who were managerial, supervisorial, and policymaking employees of the COUNTY Sheriff's Department.

4. At all relevant times, Defendant DOE "1" was duly authorized employee and agents of the COUNTY, who was acting under color of law within the course and scope of their respective duties as a Sheriff's deputy and with the complete authority and ratification of his principal, Defendant COUNTY, and is being sued in his individual capacity. DOE 1 was also employed and assigned at the COUNTY court services at the Los Angeles County Superior Court -Whittier, in the COUNTY of Whittier, California.

5. At all relevant times, Defendants DOE SUPERVISORS were duly authorized employees and agents of the COUNTY, who were acting under color of law within the course and scope of their respective duties as Sheriff's Deputies

and with the complete authority and ratification of their principal, and were acting on the implied and actual permission and consent of the COUNTY.

6.  At all times relevant, DOE SUPERVISORS were duly appointed deputies and/or employees or agents of COUNTY, subject to oversight and supervision by COUNTY's elected and non-elected officials.

7.  At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every Defendant herein.

8.   The true names of Defendants DOES 1 through 10, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitious named Defendants are responsible in some manner for the conduct and liabilities alleged herein.

9.  In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE Deputies, and DOE SUPERVISORS were acting on the implied and actual permission and consent of COUNTY.

## JURISDICTION AND VENUE

10. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth Amendments of the United States Constitution, as well as by California state laws. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

11.   Venue is proper in this Court under 28 U.S.C. § 1391(b), as all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, within the Central District of California.

12.   Pursuant to California Government Code §910 et seq., a government Tort Claim was forwarded to the County of Los Angeles, 182 days after the date of the

incident or on March 24th, 2021. This tort claim was rejected by COUNTY as untimely on May 10th, 2021.

13.     On August 31, 2021, Plaintiff filed a Petition with the Superior Court of Los Angeles, for Leave to file an untimely claim despite the COUNTY's rejection as untimely.  On February 4th, 2022, the superior court heard arguments and reviewed briefings on the petition, but deemed the Tort claim as timely since 182 days is considered to be within the proscribed statutory "6-month" time limit to submit a tort claim, and thus granted Leave to file the present claim.

14.     Accordingly, Plaintiff filed the present lawsuit alleging state claims in additional to federal claims.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

15.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 14 of this Complaint with the same force and effect as if fully set forth herein.

16.   On or about September 23, 2020, at approximately 4:00 p.m., NELSON was at the Wittier courthouse parking structure, smoking a cigarette.

17.   While inside the court parking structure, DOE 1, a Whittier Court Services deputy for the Los Angeles County Sheriff's Department ("LASD"), encountered NELSON and began accusing him of looking into parked vehicles. However, before NELSON could explain what he was doing, DOE 1 escalated the situation, removed a concealed handgun from his person, announced himself as a sheriff's deputy, and using his LASD use of force training, discharged approximately four (4) rounds at NELSON including a paralyzing shot to his back. DOE 1 intentionally fired each shot and out of the four shots, it is believed two (2) struck NELSON.

18.   Upon information and belief, DOE 1 used his cell phone to simultaneously video record his encounter with NELSON.

19.   The shooting was excessive and unreasonable because NELSON was visibly unarmed and posed no immediate threat of death or serious bodily injury to any person, including  DOE 1, at the time of the shooting.  Further, NELSON was moving away from DOE 1 at the time of the shooting, which is consistent with the entry gunshot wounds to his *back*[1].  A second gunshot wound struck NELSON's right ear which is consistent with DOE 1 intentional aiming at NELSON's head in an execution style shooting.  Most importantly, at the time of the shooting, NELSON was attempting to run for his life, when one of the four shots fired at him struck his back, paralyzing him from the waist down. The direction of the shot at NELSON's back is consistent with the attached medical record indicating an entry wound to his lower back.  After NELSON collapsed to the ground, his ordeal did not end as he remembers DOE 1 discharging one last round at him, while incapacitated, but barely missed his body.

20.   At the time of this incident, DOE 1 was acting in the course and scope of his duties and employment as a sheriff's deputy for the COUNTY/LASD. During this incident, including when he detained, arrested, and shot NELSON, DOE 1 was engaged in work that the COUNTY/LASD employed him to perform.  Further, DOE 1's conduct was incidental to his duties as a sheriff's deputy and was performed for the benefit of the COUNTY/LASD as opposed to serving his own purpose or convenience, as demonstrated by the fact that DOE 1 had never seen NELSON before.  It is in the interest of DOE 1's employer, the COUNTY/LASD, for DOE 1 to protect himself as a LASD deputy, to detain and arrest a person whom he perceives has committed a public offense, to prevent the escape of an alleged assault and battery suspect, and to act in self defense or defense of others. In other words, DOE 1 was on duty at the time of the incident.

21.   DOE 1 announced himself as a sheriff's deputy prior to

---

[1] An authenticated excerpt of Mr. Nelson LAC-USC hospital records confirms a back gunshot wound entry. See attached exhibits.

the shooting and then continued to identify himself as being a member of law enforcement throughout the encounter and after the shooting, including to responding police officers from the Whittier Police Department ("Whittier PD"), other LASD personnel and paramedics responding to the scene. NELSON knew that DOE 1 was a sheriff's deputy before he was shot. These identifications helped DOE 1 accomplish his detention and shooting of the Plaintiff , including but not limited to by preventing others from interfering and intervening in the incident both before and after the shooting.

22. On information and belief, the weapon used by DOE 1 to shoot Plaintiff was provided and/or approved by his employer, the COUNTY / LASD. Further, on information and belief, the service weapon that DOE 1 used to shoot NELSON is the same gun that he uses during his employment as a LASD deputy. Pursuant to LASD Policy Manual §§ 3-03/210, 210.05, every LASD deputy, whether off- or on-duty, shall possess an authorized firearm, and deputies who carry a concealed handgun pursuant to their employment as a LASD deputy shall only carry handguns that have been approved by the LASD. Pursuant to the same policy, a secondary weapon shall also be authorized by the department. Upon information and belief, DOE 1 used a department-authorized secondary firearm to shoot NELSON.

23. DOE 1 was only authorized to be in possession of his concealed handgun, which was issued by his employer, the COUNTY/LASD, because of his status as a law enforcement official, a court services deputy, including pursuant to California Penal Code ("PC") §§ 25450, 22400 and LASD Policy Manual § 3-03/210, 210.05. Thus, DOE 1's employment with the COUNTY/LASD predictably created a risk that NELSON would be involved in a shooting incident.

24. Pursuant to California Penal Code § 830.1, the authority of police officers extends to any place in the state as to any public offense committed in the police officer's presence. Under California PC § 836.5(a), peace officers may make

warrantless arrests whenever the officer or employee has reasonable cause to believe that the person to be arrested has committed a misdemeanor in the presence of the officer or employee that is a violation of a statute or ordinance that the officer or employee has the duty to enforce.  When DOE 1  announced himself as a sheriff's deputy, he drew a COUNTY-issued firearm, and directed NELSON to cease his movement, he gave NELSON the impression that he was under his detention or arrest someone as permitted by California PC § 830.1.

25.   DOE 1 contends that he detained, arrested and shot NELSON, to prevent his escape, to protect himself, and to stop what DOE 1 perceived to be the commission of a criminal offence in his presence inside the parking structure. Thus, DOE 1 acted in the course and scope of his employment with COUNTY/LASD.

26.   When DOE 1 detained and shot NELSON, he used his LASD training with respect to deputy tactics detentions, arrests, and the use of deadly force—training that Plaintiff claims was inadequate.  In drawing his concealed  department-approved firearm in a public place, taking aim and then deliberately firing rounds in the direction of NELSON, and successfully striking him twice all while NELSON was running away, he acted as a LASD sheriff's deputy is trained to act. A private citizen would not have accomplished the detention and shooting in the same way that DOE 1, a trained sheriff's deputy, did.

27.  After the shooting, DOE 1 continued to identify himself as a sheriff's deputy and asserted authority over the area, making statements such as *"It's Okay, It's Okay,  I Am A Cop"*, as he trained his weapon on NELSON, while he laid on the ground, which prevented witnesses and other members of law enforcement from providing immediate care to Plaintiff.  DOE 1 did not attempt to render aid himself.

28.   DOE 1 identified himself as a member of law enforcement to alter, control and/or influence the behavior of the other arriving police officers, including so that they would not interfere with DOE 1's use of force and so that no person would

come to the immediate aid of NELSON.  After DOE 1 identified himself as a cop, another member of law enforcement, upon information and belief, a sergeant, instructed him to immediately call his supervisor and his department on his cell phone.

29.     If DOE 1 had not identified himself as a sheriff's deputy, then he would have been treated in a much different manner immediately following the shooting, including being arrested on the spot, and charged criminally with attempted murder.

30.     After the shooting, DOE 1 was allowed to remain armed with his department-issued concealed weapon and make phone calls, including to his employer, the COUNTY/LASD.

31.  Also after the shooting, local law enforcement agencies, including the Whittier PD, responded to the scene to investigate the shooting.  DOE 1 identified himself as being a sheriff's deputy to the responding law enforcement agencies, and as a result, the responding law enforcement officers did not detain nor arrest DOE 1.  Instead, DOE 1 was released without even being ticketed or cited for any crime.  Undoubtedly, if DOE 1 had not identified himself as a sheriff's deputy, then the responding law enforcement officers would have immediately arrested him and transported him to jail.  Any other civilian who shoots a man in the back with a concealed weapon would have been immediately arrested, jailed, and criminally charged.

32.  In the aftermath of the incident, Whittier PD personnel who responded to the scene coordinated with DOE 1 and his employer, the COUNTY/LASD, further showing that DOE 1's conduct was within the course and scope of his employment.

33.  The COUNTY/LASD treated this incident as if it were an deputy-involved shooting that had occurred during the course and scope of DOE 1's employment as a LASD deputy.  In fact, on its website, the LASD included DOE 1's shooting

in its yearly "deputy-involved shootings" listing as part of its shooting/use of deadly force statistics.

34.   Prior to DOE 1 being interviewed by any local law enforcement agency, including the Whittier PD, per the LASD Use of Force Review policy 3-10/110.00, DOE 1's Unit and Division Commander are to respond to the scene of the shooting to conduct a preliminary investigation and gather information and prepare a Force Package, all of which is readily accessible to DOE 1.

35.   Separately, pursuant to LASD policy 3-10/130.00, after a shooting takes place, whether it's off-or on-duty, the IAB Force /Shooting Response teams are activated to conduct their own investigation, especially if another person was intentionally fired upon by a member of the department.

36.   Further, on information and belief, DOE 1 was considered "on duty" and/or "on the clock" with the LASD, and was paid by LASD, during the time he spent being interviewed by LASD investigators, which is also standard protocol for deputy-involved shootings that occur during the course and scope of an deputy's employment as a member of the LASD.

37.   On information and belief, after the shooting, DOE 1 was provided with an attorney because he was law enforcement.  If DOE 1 was not a member of law enforcement, then he would not have been allowed to consult with a lawyer shortly after the incident, especially because he had not been charged with any crime. Further, an official statement from DOE 1 would have been given, but again, not until after DOE 1 had an opportunity to confer with counsel.

38.   On information and belief, approximately a few days after the shooting, DOE 1 and investigators from LASD did a walk-through at the parking structure so that DOE 1 could explain to LASD investigators how the shooting occurred.  This is standard protocol for deputy-involved shootings that occur during the course and scope of a deputy's employment with the LASD.  On information and belief, DOE 1 was ordered to be "on duty" by his

LASD supervisors to conduct a walk through and was paid by the LASD for that time, including travel.  This is also standard protocol for LASD deputy-involved shootings that occur during the course and scope of a deputy's employment.  The LASD does not conduct walk-throughs with shooting suspects who are not members of the LASD, and the LASD does not conduct walk-throughs regarding the actions of their employees when such actions occur outside the course and scope of the officer's employment.

39.   The LASD also interviewed and/or participated in the interviews of witnesses to the shooting, including NELSON. In fact, investigators attempted to interview NELSON on three separate occasions, twice while he was recovering at LAC-USC hospital and once after he was transferred to a rehabilitative center. This is standard LASD protocol for shootings that occur during the course and scope of an deputy's employment.  The LASD would not have been permitted to participate in the interviews of witnesses to the shooting if DOE 1 was not a member of law enforcement.

40.   After the shooting, DOE 1 worked in concert with local law enforcement investigators, including the Whittier PD, to distort the facts and develop a false narrative to facilitate the cover-up of events that culminated with the unlawful shooting and serious injuries to Plaintiff, including falsification of the account of the incident, witness tampering, and evidence tampering.

41.   DOE 1 was not indicted for any crime relative to the detention and shooting of NELSON. Certainly, if DOE 1 was not a sheriff's deputy, then he would have been  prosecuted for shooting a visibly unarmed individual, while he was running away from him, inside a parking structure,  when there was no immediate threat of death or serious bodily injury to any person.

42.   DOE 1's misuse of power as described above, possessed by virtue of state law and made possible only because DOE 1 was clothed with the

authority of state law by announcing himself as a sheriff's deputy, is action taken under the color of state law.  Indeed, a defendant in a 42 U.S.C. section 1983 lawsuit acts under color of state law when he abuses the position given to him by the State.

43.    As a result of the gunshot wounds sustained, NELSON suffered serious physical and psychological injuries, including paraplegia and Post-Traumatic-Stress-Disorder, all of which will require a lifetime of medical attention and care. He was only 23 years of age at the time of this incident.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure-
### Excessive Force (42 U.S.C. § 1983)

44.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-43 of this Complaint with the same force and effect as if fully set forth herein.

45.  At all relevant times, Defendant DOE 1 was acting under color of state law.  When DOE 1 detained and arrested Plaintiff, he exercised power possessed by virtue of state law and made possible only because DOE 1 was clothed with the authority of state law.  DOE 1 was employed by the state and abused the position given to him by the state; thus, he acted under color of state law. Further, DOE 1's actions, including detaining, arresting, and shooting Plaintiff, was performed while DOE 1 was acting,  purporting to act, or pretending to act in the performance of his official duties as a sheriff's deputy for the LASD/COUNTY.  Additionally, DOE 1's pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiff, bystanders, responding law enforcement personnel and medical responders, responding Whittier PD officers, investigators for the LASD, and IAB Division, DOE 1's employer, the COUNTY/LASD.  Additionally, DOE 1's conduct—including detaining, arresting, and shooting Plaintiff and in response to what DOE 1 perceived what he believed to be the commission of a public offense

and protecting himself as an LASD deputy—was related in a meaningful way to DOE 1 status as a sheriff's deputy and performance of his duties as a sheriff's deputy for the COUNTY/LASD.

46.   DOE 1 detained NELSON without reasonable suspicion and arrested him without probable cause.  Not only was the detention itself unreasonable, but the scope and manner of the detention was also unreasonable.  When DOE 1 pointed his COUNTY-issued weapon at NELSON and then shot him, he violated their rights to be secure in their persons against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.  Further, DOE 1 forced NELSON to stay in place, although paralyzed from the waist down at this point, his conduct was akin to law enforcement securing and restraining a suspect.

47.   The unreasonable use of force by DOE 1, including shooting his firearm at NELSON, deprived him of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

48.   All unreasonable seizures that preceded the shooting constituted reckless and intentional escalations of the situation which directly led to the shooting, therefore rendering the aforementioned Defendant liable under an excessive escalation theory.

49.  As a result, NELSON suffered debilitating injuries  including two gunshot wounds resulting in paraplegia, disfigurements, emotional and mental injuries including Post Traumatic Stress Disorder, humiliation, anguish, reduced earning capacity, lost wages, past and future medical expenses, and emotional distress.

50.  The conduct of DOE 1 was willful, wanton, malicious, and done with reckless disregard for NELSON's rights and safety and therefore warrants the imposition of exemplary and punitive damages.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure-

### Detention and Arrest (42 U.S.C. § 1983)

51.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-43 of this Complaint with the same force and effect as if fully set forth herein.

52.    At all relevant times, Defendant DOE 1 was acting under color of state law.  When DOE 1 detained and arrested Plaintiff, he exercised power possessed by virtue of state law and made possible only because DOE 1 was clothed with the authority of state law.  DOE 1 was employed by the state and abused the position given to him by the state; thus, he acted under color of state law. Further, DOE 1's actions, including detaining, arresting, and shooting Plaintiff, was performed while DOE 1 was acting,  purporting to act, or pretending to act in the performance of his official duties as a sheriff's deputy for the LASD/COUNTY.  Additionally, DOE 1's pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiff, bystanders, responding law enforcement personnel and medical responders, responding  Whittier PD officers, investigators for the LASD, and IAB Division,  DOE 1's  employer, the COUNTY/LASD.  Additionally, DOE 1's conduct—including detaining, arresting, and shooting Plaintiff  and in response to what DOE 1  perceived what he believed to be the commission of a public offense and protecting himself as an LASD deputy—was related in a meaningful way to DOE 1 status as a sheriff's deputy and performance of his duties as a sheriff's deputy for the COUNTY/LASD.

53.    DOE 1 detained NELSON without reasonable suspicion and arrested him without probable cause.  Not only was the detention itself unreasonable, but the scope and manner of the detention was also unreasonable.  When DOE 1 pointed his COUNTY-issued weapon at NELSON and then shot him, he violated his rights

to be secure in his person against unreasonable searches and seizures as
guaranteed to him under the Fourth Amendment to the United States Constitution
and applied to state actors by the Fourteenth Amendment.  Further, DOE 1 forced
NELSON to stay in place, thereby delaying his receipt of medical attention.

54.  As a result, NELSON suffered debilitating injury including two gunshot
wounds resulting in paraplegia, disfigurements, emotion and mental injuries
including Post Traumatic Stress Disorder, humiliation, anguish, reduced earning
capacity, lost wages, past and future medical expenses, and emotional distress.

55.  The conduct of DOE 1 was willful, wanton, malicious, and done with
reckless disregard for NELSON's rights and safety and therefore warrants the
imposition of exemplary and punitive damages.

### THIRD CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional
Custom/Policy/Practice (42 U.S.C. § 1983)**

56. Plaintiff repeats and re-alleges each and every allegation in paragraphs
numbered 1-43 of this Complaint with the same force and effect as if fully set
forth herein.

57. On and for some time prior to September 23, 2020 (and continuing to the
present date) Defendants COUNTY, DOE Deputies, and DOE SUPERVISORS,
deprived Plaintiff of the rights and liberties secured to them by the Fourth and
Fourteenth Amendments to the United States Constitution, in that said Defendants
and their supervising and managerial employees, agents, and representatives,
acting with gross negligence and with reckless and deliberate indifference to the
rights and liberties of the public in general, of Plaintiff, and of persons in their
class, situation and comparable position in particular, knowingly maintained,
enforced and applied an official recognized COUNTY custom, policy, and
practice of:

(a) Employing and retaining as Sheriff's deputies  and other personnel, including Defendants DOE 1 who Defendants COUNTY and DOE SUPERVISORS at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written COUNTY Sheriff's Department policies and for using excessive force;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining COUNTY Sheriff's Deputies, and other COUNTY personnel, including Defendants DOE OFFICERS, who Defendants COUNTY and DOE SUPERVISORS each knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(c) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants DOES 1-5, who are COUNTY Sheriff's Deputies;

(d) By having and maintaining an unconstitutional custom and practice of using excessive force, and covering up police misconduct. These customs and practices by COUNTY and DOE SUPERVISORS were condoned by said Defendants in deliberate indifference to the safety and rights of its civilian, including Plaintiff .

58. By reason of the aforementioned policies and practices of Defendants COUNTY and DOE SUPERVISORS, Plaintiffs have suffered severe pain and suffering, mental anguish, humiliation, and emotional distress.

59. Defendants COUNTY and DOE SUPERVISORS, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable

effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

60. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY and DOE SUPERVISORS acted with an intentional, reckless, and callous disregard for the well-being of Plaintiffs and their constitutional as well as human rights. Defendants COUNTY and DOE SUPERVISORS and each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

61. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants COUNTY and DOE SUPERVISORS were affirmatively linked to and were a significantly influential force behind the Plaintiffs injuries.

62. Accordingly, Defendants COUNTY and DOE SUPERVISORS each are liable to Plaintiff NELSON for compensatory damages under 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional
### Ratification  (42 U.S.C. § 1983)

63. Plaintiff repeats and re-alleges each and every allegation in paragraphs numbered 1-43 of this Complaint with the same force and effect as if fully set forth herein.

64.  At all relevant times, Defendant DOE 1 was acting under color of state law.  When DOE 1 detained and arrested Plaintiff, he exercised power possessed by virtue of state law and made possible only because DOE 1 was clothed with the authority of state law.  DOE 1 was employed by the state and abused the position given to him by the state; thus, he acted under color of state law. Further, DOE 1's actions, including detaining, arresting, and shooting Plaintiff, was performed while DOE 1 was acting,  purporting to act, or pretending

to act in the performance of his official duties as a sheriff's deputy for the LASD/COUNTY.  Additionally, DOE 1's pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiff, bystanders, responding law enforcement personnel and medical responders, responding Whittier PD officers, investigators for the LASD, and IAB Division,  DOE 1's  employer, the COUNTY/LASD.  Additionally, DOE 1's conduct—including detaining, arresting, and shooting Plaintiff  and in response to what  DOE 1  perceived what he believed to be the commission of a public offense and protecting himself as an LASD deputy—was related in a meaningful way to DOE 1 status as a sheriff's deputy and performance of his duties as a sheriff's deputy for the COUNTY/LASD.

65.  Upon information and belief, a final policymaker, acting under color of state law, who had final policymaking authority concerning the acts of DOE 1, ratified (or will ratify) DOE 1's acts and the bases for them.

66.  Upon information and belief, the final policymaker(s) knew of and specifically approved of (or will specifically approve of) DOE 1's acts.  Upon information and belief, the final policymaker(s) have determined (or will determine) that the acts of Defendants DOE 1 were "within policy."

67. As a direct and proximate result of the aforementioned unconstitutional policies and customs, NELSON suffered extreme mental and physical pain and suffering, loss of enjoyment of life, and the loss of his of earning capacity.

68.  Also as a direct and proximate result of the aforementioned unconstitutional policies and customs, NELSON suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses.  NELSON will require medical attention and care for the rest of his natural life.

69.   Accordingly, Defendants COUNTY and DOES 1-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

### FIFTH CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional**

**Failure to Train  (42 U.S.C. § 1983)**

70. Plaintiff repeats and re-alleges each and every allegation in paragraphs numbered 1-43 of this Complaint with the same force and effect as if fully set forth herein.

71.   At all relevant times, Defendant DOE 1 was acting under color of state law.  When DOE 1 detained and arrested Plaintiff, he exercised power possessed by virtue of state law and made possible only because DOE 1 was clothed with the authority of state law.  DOE 1 was employed by the state and abused the position given to him by the state; thus, he acted under color of state law. Further, DOE 1's actions, including detaining, arresting, and shooting Plaintiff, was performed while DOE 1 was acting,  purporting to act, or pretending to act in the performance of his official duties as a sheriff's deputy for the LASD/COUNTY.  Additionally, DOE 1's pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiff, bystanders, responding law enforcement personnel and medical responders, responding Whittier PD officers, investigators for the LASD, and IAB Division, DOE 1's employer, the COUNTY/LASD.  Additionally, DOE 1's conduct—including detaining, arresting, and shooting  Plaintiff  and in response to what DOE 1  perceived what he believed to be the commission of a public offense and protecting himself as an LASD deputy—was related in a meaningful way to DOE 1 status as a sheriff's deputy and performance of his duties as a sheriff's deputy for the COUNTY/LASD.

72.  On information and belief, Defendants COUNTY and DOES 1-10 failed to properly and adequately train DOE 1, including with respect to detentions, arrests, and the use of deadly force generally.

73.  The training policies of Defendants COUNTY and DOES were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including the use of force.

74.   Defendants COUNTY and DOES 1-10 were deliberately indifferent to the obvious consequences of the failure to train LASD deputies adequately.

75.   The failure of Defendants COUNTY and DOES 1-10 to provide adequate training caused the deprivation of Plaintiffs' rights Defendant DOE 1; that is, Defendants' failure to train is so closely related to the  deprivation of  NELSON's rights as to be the moving force that caused the ultimate injury.

76.  As a direct and proximate result of the aforementioned  failure to train, NELSON suffered extreme mental and physical pain and suffering, loss of enjoyment of life, and the loss of his of earning capacity.

77.  Also as a direct and proximate result of the aforementioned Failure to train, NELSON suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses.  NELSON will require medical attention and care for the rest of his natural life.

78.  Accordingly, Defendants COUNTY and DOES 1-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF
### BATTERY (state)

79.  Plaintiff hereby repeats, re-states, and incorporates each and every allegation in paragraphs 1-43 of this Complaint with the same force and effect as if fully set forth herein.

80.   DOE 1, while working as LASD deputy for the COUNTY sheriff's Department, and acting within the course and scope of his duty, intentionally used force against NELSON, including the use of deadly force discharging four rounds from his firearm. DOE 1 had no legal justification for using force against Decedent NELSON, and his use of force while carrying out law enforcement duties was unreasonable.

81.   COUNTY is vicariously liable for the wrongful acts of DOE 1 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

82. The conduct of DOE 1 was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages.

83.   As a direct and proximate result of the aforementioned  acts of battery, NELSON suffered extreme mental and physical pain and suffering, loss of enjoyment of life, and the loss of his of earning capacity.

84.   Also as a direct and proximate result of the aforementioned acts of battery, NELSON suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses.  NELSON will require medical attention and care for the rest of his natural life.

85.   Accordingly, Defendants COUNTY and DOES 1-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

# SEVENTH CLAIM OF RELIEF

## NEGLIGENCE (state)

86. Plaintiff hereby repeats, re-states, and incorporates each and every allegation in paragraphs 1-43 of this Complaint with the same force and effect as if fully set forth herein.

87.   The actions and inactions of COUNTY employees, including DOE 1 were negligent and reckless, including but not limited to: (a) the failure to properly and adequately assess the need to detain, arrest, and use force against NELSON; (b) the negligent pre-shooting tactics and handling of the incident; (c) the negligent detention, arrest, and use of force against NELSON (d) the failure to monitor and record any injuries specifically caused by the use of force by COUNTY deputy, including DOE 1; (e) the negligent handling of evidence and witnesses; and (f) the negligent communication of information during the incident.

88.  Plaintiff suffered harm and agony as a direct and proximate result of COUNTY employees' conduct as alleged above.

89.  COUNTY is vicariously liable for the wrongful acts of its employees, including DOE 1, pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment, as described supra, if the employee's act would subject him or her to liability.

90.  The conduct of COUNTY employees, including DOE 1, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of NELSON. Specifically, because NELSON never posed a threat of serious bodily injury or death as he was running away from DOE 1, DOE 1's act of shooting at his back while NELSON retreated was nothing short of malicious, entitling Plaintiff to an award of exemplary and punitive damages.

91.   Plaintiff NELSON seeks all damages entitled to him under California state law.

## **EIGHTH CLAIM FOR RELIEF**

### **Violation of Bane Act (Cal. Civ. Cod 52.1-state)**

92. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1-43 of this Complaint, and by this reference incorporates the same herein and makes each a part hereof as though fully set forth.

93. DOE 1 attempted to interfere with and did interfere with the rights of NELSON of free speech, free expression, free assembly, due process, and to be free from unreasonable search and seizure, by threatening and committing violent acts.

94. DOE 1 injured NELSON to prevent him from exercising his rights of free speech, free expression, free assembly, due process, and to be free from unreasonable search and seizure, and retaliate against him for having exercised their rights of free speech, free expression, free assembly, due process, and to be free from unreasonable search and seizure.

95. The conduct of DOE 1  was a substantial factor in causing harm to NELSON.

96. COUNTY is vicariously liable for the wrongful acts of DOE 1 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

97. The conduct of DOE 1 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of NELSON, entitling Plaintiff to an award of exemplary and punitive damages.

98. Plaintiff NELSON seeks all compensatory and general damages he would be entitled to under this claim, including statutory attorney's fees and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in his favor and against Defendants COUNTY, DOE 1, and DOE SUPERVISORS, inclusive, as follows:

1.  For compensatory damages, including both past and future general, special damages under federal and state law, in an amount to be proven at trial;

2.  For punitive damages against the individual Defendants in an amount to be proven at trial;

3.  For interest;

4.  For costs of this suit and reasonable attorneys' fees under 42 U.S.C. §1988 and C.C. §52.1 et seq.; and

5.  For such further other relief as the Court may deem just, proper, and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: February 7, 2022                    THE SEHAT LAW FIRM, PLC

                                           /s/*Cameron Sehat*
                                           Attorney for Samuel Nelson